**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.           Civil Case No.     09-10158
             Criminal Case No.  99-80796

RODNEY RICE,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

On January 14, 2009, Defendant Rodney Rice, a prisoner at the Federal Correctional Institution in Ashland, Kentucky, filed a "Motion to Vacate Sentence Under 28 U.S.C. § 2255." Defendant raises four grounds in his § 2255 motion; all four are based on ineffective assistance of counsel. Defendant also asks for an evidentiary hearing pursuant to Rule 8 of the Rules Governing § 2255 Proceedings. Because the record conclusively shows that Defendant's right to effective counsel was not violated and he is therefore not entitled to relief under § 2255, his motion will be denied without an evidentiary hearing. The court will also decline to issue Defendant a certificate of appealability.

**I. BACKGROUND**

Defendant is a former police officer of the fifth precinct of the Detroit Police Department. On April 27, 2001, Rice was convicted by a jury of a variety offenses, including substantive and conspiracy RICO offenses. The crimes arose from

Defendant's abuse of his position as a police officer and violation of others' rights for his gain. The court sentenced Rice to 210 months of incarceration. The Sixth Circuit affirmed his conviction, but the Untied States Supreme Court remanded the case to this court for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). On remand, this court sentenced Defendant to 174 months of incarceration. The sentence was affirmed by the Sixth Circuit, and the Supreme Court denied Defendant's motion for a writ of certiorari.

Defendant seeks relief from the 174-month sentence pursuant to 28 U.S.C. § 2255. Defendant asserts that relief is justified because his Sixth Amendment right to effective assistance of counsel was violated in four ways: (1) his counsel did not move for dismissal based on a Speedy Trial Act violation; (2) his counsel recommended trial rather than accepting the Government's proposed plea agreement; (3) his counsel was ineffective at trial for not properly impeaching a witness; and (4) his counsel was ineffective during the sentencing and resentencing phases.

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Such motions, however, must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

An evidentiary hearing is not required for all § 2255 motions: "an evidentiary hearing is required unless the record conclusively shows that the defendant is entitled to no relief. Stated another way, no hearing is required if the defendant's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

All of Defendant's grounds for relief are based on ineffective assistance of counsel. Accordingly, to prevail, he must establish that (1) his "counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). "The objective standard of reasonableness is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) (quotation marks omitted). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

"When deciding ineffective-assistance claims, courts need not address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Campbell*

*v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

### III.  DISCUSSION

### A. Speedy Trial

Defendant argues that his trial counsel rendered ineffective assistance of counsel by failing to move for dismissal based on a speedy trial violation.  The United States responds that even if Defendant's right to a speedy trial was violated,[1] Defendant has failed to establish that he was prejudiced by his counsel's failure to dismiss the case.  The court agrees that Defendant has failed to show that he was prejudiced by a his counsel's failure to move for dismissal based on an alleged Speedy Trial Act violation.

Although Defendant spent seven pages arguing that a Speedy Trial violation occurred, he gave scant attention—just two conclusory sentences—to whether the alleged violation resulted in prejudice.  Defendant simply states that the "charges against the Defendant would have been dismissed."  (Pet. Mot. Br. 12.)  This is simply not enough to establish prejudice.  To establish prejudice in satisfaction of *Strickland*, Defendant must show that the dismissal would have been with prejudice, or that Defendant suffered some other actual prejudice, such as, a witness becoming unavailable.  *See Campbell*, 364 F.3d at 731.  Defendant establishes neither of these possibilities.

He makes no allegations that he suffered actual prejudice from the delay.  In fact, the record indicates that, due to the complex nature of the case, Defendant benefitted from the delay by having more time to prepare a defense.  (12/23/99 Scheduling

---

[1] The United States does not concede this point.

Stipulation.)

Under the Speedy Trial Act, courts must consider three factors to determine whether a dismissal will be with or without prejudice: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1). First, the offenses of which Defendant was convicted are serious: civil rights conspiracy; drug conspiracy; substantive and conspiracy RICO offenses; and conspiracy to commit extortion. Further, the sentence that Defendant received was nearly fifteen years of incarceration. *See Campbell*, 364 F.3d at 731 (30-year sentence indicated seriousness of crime). Second, the delays were occasioned by the complexity of the case and the number of defendants. The case involved "a lengthy grand jury investigation, with literally hundreds of witnesses." (08/16/00 Stipulation to Continue Trial and for Finding Excludable Delay 1.) The United States produced over 1000 pages of documents in discovery. (Pretrial Mots. Tr. 5, Mar. 7, 2000.) During discovery, the number of potential government witnesses was nearly two hundred. (*Id.* at 19-20.) In fact, because of the complexity of discovery *the defendants sought* a four-month delay in the start of trial, and, as such, defendants all indicated that there were no Speedy Trial issues. (*Id.* at 29-31.) Finally, dismissal without prejudice would not interfere with the administration of the Speedy Trial Act or of justice. As discussed above, Defendant does not allege any actual prejudice as a result of the delay. Nor does he allege that the Government engaged in bad faith that must be deterred to further the purposes of the Speedy Trial Act. Accordingly, any dismissal under the Act would have been without prejudice. Plaintiff's ineffective assistance of counsel claim

5

therefore fails for want of prejudice, even assuming a Speedy Trial Act violation.

## B. Decision to Plead Not Guilty

Defendant next argues that he received ineffective assistance of counsel because his attorney imprudently advised him not to take a plea bargain. Defendant alleges that counsel advised him that the Government could not prove its case and, specifically, that the Government could not prove its case based on circumstantial evidence. He also asserts that counsel "never informed [him] of the risks of additional sentencing." Defendant maintains that had he been properly informed, he would have pled guilty. Not only are Defendant's assertions of ignorance of the risk of going to trial unbelievable, the record conclusively establishes that Defendant was fully informed of the risks of proceeding to trial. Defendant signed an acknowledgment of the First Superseding Indictment, which stated "I know that if I am convicted or plead guilty, I may be sentenced as follows: . . . Count 1: . . . 10 years . . . . Count 2: . . . 20 years . . . . Count 3: . . . 20 years . . . . Count 4: . . . 20 years . . . . Count 5: . . . 20 years . . . . Count 6: . . . 20 years . . . . Count 9: . . . 10 years . . . . Count 11: . . . 10 years . . . . Count 12: . . . 5 years . . . ." (Resp't's Resp. Ex. A.) He cannot now maintain that he was unaware that a guilty verdict could result in a sentence greater than 10 years. As for his claim of ignorance of the possibility of being convicted based on circumstantial evidence, it is too incredible to believe that Defendant's "long service to the City of Detroit . . . as a police officer" did not give the knowledge that defendants are convicted on circumstantial evidence. (*See* Pet. Br. 20.)

Moreover, the court confirmed that Defendant knew of the risks of going to trial:

The Court:    It is apparently your decision after having talked with counsel

6

> that you do not wish to further engage in such plea negotiations, is that correct?
>
> [Defendant]: Yes.
>
> . . .
>
> The Court: All right. Are you satisfied with your attorney's representation and his advice in this regard?
>
> [Defendant]: Yes.
>
> The Court: You think he's described to you fairly so that you can understand the advantages and disadvantages of what may lie before you?
>
> [Defendant]: Yes.
>
> The Court: If you were to negotiate a plea?
>
> [Defendant]: Yes, sir.
>
> The Court: And you've talked about the advantages and disadvantages of going to trial, is that correct also?
>
> [Defendant]: Yes.
>
> The Court: And it is your decision, sir, to not further engage in any plea negotiations, but rather to exercise your right to go to trial, is that correct?
>
> [Defendant]: Yes.

(Final Pretrial Conference Tr. 6-7, Feb. 21, 2001.) The court is therefore convinced that Defendant was not misled by his counsel into believing that the risks of trial were less than they actually were.

### C. Impeachment of Jajuan Harrison

Defendant also argues that his counsel was unconstitutionally deficient for failing to effectively impeach one of the Government's witnesses. Jujuan Harrison testified before the grand jury and at trial to the effect that he was robbed by Defendant while

Defendant was on duty. Defendant maintains that Harrison's testimony was false, because Harrison initially stated that the robbery took place on a day on which Defendant was not working. After being confronted with this fact, Harrison then stated that the robbery must have occurred on a different day. Defendant maintains that had his attorney properly impeached Harrison with this discrepancy, supported by time-sheets from the police department, as well as internal-affairs records of Harrison's charge, "there is a reasonable probability that the jury would have acquitted" him. Defendant's attorney, however, effectively impeached Harrison. Defendant testified at length on direct examination that he was not working the day on which Harrison claimed he was robbed. Defendant also testified as to Harrison's change of story, and Harrison's prior inconsistent statement. (Trial Tr. 3270-73, Apr. 4, 2001.) Moreover, Defendant's attorney attacked Harrison's credibility on cross examination. He pointed out that Harrison did not remember the date of the robbery. (*Id.* 2301.) He pointed out inconsistencies between the trial testimony and the grand jury testimony. For example, while before the grand jury, Harrison testified that Defendant did not search Harrison's friend's car, but at trial Harrison testified that Defendant did search the friend's car. (*Id.* 2305-06.) Defendant's attorney then finished cross examination with a persuasive attack on Harrison's memory:

> Q: You were told to tell only the truth . . . ?
>
> A: Yes. . . . It's like maybe a year and a couple months [after the grand jury, and] on top of smoking weed and drinking and trying to remember back, and having several altercations with them, it will be kind of hard to remember everything . . . .

(*Id.* at 2308.) After this question and response, Defendant's attorney asked just one

8

final question. It is hardly worth mentioning that a crucial aspect of effective cross examination is knowing when to stop asking questions. The court cannot fault Defendant's attorney for ending his attack on Harrison's credibility when he did. Harrison's response was particularly damaging to his credibility. Further, his comment about "having several altercations" indicates that further testimony may have damaged Defendant's defense. The court therefore finds that Defendant's attorney's impeachment of Harrison was "sound trial strategy" well within "the prevailing professional norms." *See Strickland*, 466 U.S. 689-90.

### D. Sentencing Phase

Defendant raises two claims of ineffective assistance of counsel related to representation during the sentencing phases. Defendant claims ineffective assistance of counsel because his attorney did not argue that the court's written judgment and sentence was an illegal amendment of its oral sentence. Defendant claims that, at the sentencing hearing, the court defined Defendant's offense level as 32, while in the written judgment the court defined the offense level as 35. Defendant's claim is false: the record conclusively establishes that the court calculated an offense level of 35 at the sentencing hearing. (Sentencing Tr. 24, March 3, 2002.)

Defendant also argues that his attorney was constitutionally deficient during resentencing, because his attorney did not argue for a downward departure based on Defendant's record of service for the Detroit Police Department. This argument is untenable. Defendant's attorney stressed the heightened importance of Defendant's record of service in a post-*Booker* sentencing regime. Counsel argued that the discretionary sentencing factors found in 18 U.S.C. § 3553 were particularly important

9

given Defendant's "commendable service as a police officer, the enormous stresses he was under, given a particular assignment that he had as a police officer and the kind of work he did for so long and so wonderfully." (Resentencing Tr. 10, April 28, 2006.) But the court did not consider Defendant's record of service as entirely mitigating: "It's just so upsetting that men who could be such wonderful, blameless examples of adult responsibility and could be on something like the Detroit Police Department and absolutely a pillar of the community . . . would sink to [this] kind of depths . . . ." (*Id.* at 24.) Instead, the court was particularly persuaded by Defendant's rehabilitative activities in prison since he was incarcerated after the first sentencing. (*Id.* at 28.) In fact, this was the court's justification for a 36-month moderation of his sentence. It is ridiculous to suggest that Defendant's attorney's choice to abstain from further pressing a point that the court considered as aggravating rather than mitigating was ineffective assistance. On resentencing, Defendant received a three-year sentence reduction—his counsel was effective by any measure.

## IV.  CERTIFICATE OF APPEALABILITY

A defendant must receive a certificate of appealability ("COA") in order to appeal the denial of a § 2255 motion. 28 U.S.C. §§ 2253(c)(1)(B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a § 2255 motion or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the § 2255 motion, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in

the best position to decide whether to issue a COA.  *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the defendant demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A [defendant] satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the defendant's claims. *Id.* at 336-37.  The court concludes that jurists of reason would not find the court's assessment of the constitutional claims debatable or wrong.  The court thus declines to issue Defendant a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's § 2255 motion [Dkt. # 366] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated:  October 28, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 28, 2009, by electronic and/or ordinary mail.

                                                s/Lisa G. Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522